[Crim. No. 668.   First Appellate District.—May 10, 1917.]

## THE PEOPLE, Respondent, v. HENRY J. STANLEY, Appellant.

CRIMINAL LAW—OMISSION TO PROVIDE FOR ILLEGITIMATE CHILD—STATUTE OF LIMITATIONS.—A prosecution under section 270 of the Penal Code, which went into effect on August 8, 1915, for omitting to provide for an illegitimate child, is not barred by the one-year limitation provided by section 801 of such code, although the omission began at the child's birth, which was more than one year before the filing of the information charging the offense as having been committed after the statute went into effect, and within the statutory period of the year.

ID.—CONSTRUCTION OF STATUTE—CONTINUING OFFENSE.—Under section 270 of the Penal Code, the offense of omitting to provide for an illegitimate child is in the nature of a continuing offense, and public policy requires such a construction of its terms as to render each and every willful omission without legal excuse to so provide a fresh offense, and so construed, the statute is no more *ex post facto* in its intendment and effect than would any other statute be which made penal acts and conduct which were not so prior to its enactment.

ID.—PROSECUTION OF FATHER OF ILLEGITIMATE CHILD—PREVIOUS ESTABLISHMENT OF DUTY TO SUPPORT—NONESSENTIAL REQUIREMENT.—Under section 270 of the Penal Code, the alleged father of an illegitimate child may be prosecuted for failure to support it with-

out having his duty so to do established and directed in a civil action under section 196a of the Civil Code.

ID.—PUBLIC TRIAL—WAIVER.—A defendant in a criminal action cannot claim that he was denied the right to a public trial where, at his own request, spectators were excluded and he concurred in the order made.

ID.—ORDER OF EXCLUSION—RIGHT TO PUBLIC TRIAL NOT VIOLATED.—The right to a public trial is not violated when the order of the court excluding the public is sufficiently broad and flexible as to admit the officers of the court, the witnesses for the respective parties, the members of the bar, and all others who have a legitimate interest in the case, including relatives or friends of the defendant and of the complaining witness, and only excluding those who have no interest in the case.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Edwin V. McKenzie, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment of conviction of the defendant upon the charge of omitting to provide for an illegitimate child, and from an order denying his motion for a new trial.

The first contention urged by the appellant is that the offense of which he was convicted is barred by the provision of section 801 of the Penal Code. The argument in support of this contention is based upon the facts that the statute under which this prosecution was had went into effect on August 8, 1915; that the child was born March 25, 1915, and that the defendant's omission to provide for it began at the date of its birth; that the information was filed herein on August 7, 1916; that the statutory limitation upon misdemeanors of this character is one year. From these facts the appellant argues that he is being prosecuted for an offense committed more than one year before the information was filed; and in connection with this argument, and upon the same state of facts, the appellant urges that the statute itself is an *ex post*

*facto* law, at least in its application to his case, in that it has undertaken to make and punish as an offense that which was not a punishable offense at the time of its commission.

Neither of these contentions is well taken. As to both of them it appears that the information charged the offense as having been committed on October 15, 1915, and that the information was filed on August 16, 1916, or within the statutory period of the year, and that the proofs in the case support the date fixed for the inception of the defendant's offense. The statute under which he was charged and convicted became effective on August 8, 1915. It made an offense that which was not so in a legal sense before it went into effect. It did not purport to punish acts of omission prior to the date upon which it took effect, and the statute of limitations could not therefore have commenced to run before that date, nor could the defendant have been guilty of acts of omission which he could urge as constituting the inception of the crime which did not, in legal effect, exist so as to entitle him to the benefit of the statutory limitation. Besides, we are disposed to agree with the suggestion of the trial court in its charge to the jury that the offense of which the defendant stands convicted is in the nature of a continuing offense, and that public policy would require such a construction of the terms of section 270 of the Penal Code as to render each and every willful omission without legal excuse on the part of the parent to furnish necessary food, clothing, shelter, or medical attendance to his or her child a fresh offense. So construed this statute is no more *ex post facto* or retroactive in its intendment and effect than would any other statute be which made penal acts and conduct which were not so prior to its enactment.

The next contention of the appellant is that there can be no prosecution of the alleged father of an illegitimate child for his failure to support it until his duty so to do has been established and directed in a civil action under section 196a of the Civil Code. It is sufficient to say in response to this contention that the cases cited by the appellant in seeming support of it were decided prior to the amendment of section 270 of the Penal Code, and were among the causes which moved the legislature to so amend said section of the Penal Code as to make its provisions expressly applicable to the parents of illegitimate children; and it is further quite clear that the provisions of the Civil Code having reference to the custody

and support of legitimate children can have no application to illegitimates. The fact that there may be difficulties in some instances in establishing paternity in the latter class of cases would not of itself be a sufficient reason for importing into the statute the requirement of an antecedent civil action not contemplated by its terms. We find no merit, therefore, in this contention on the part of the appellant.

The appellant's next contention is that the venue of this prosecution was not properly laid or proven since, as he claims, the evidence shows that the mother of the child did not reside in the city and county of San Francisco at the time of the defendant's alleged omission to provide necessaries for it. But in this regard the evidence is conflicting, and for that reason the judgment of the trial court will not be disturbed.

The next contention is that he was denied his right to a public trial. The following are the facts occurring during the course of the trial upon which this contention is predicated: Upon the opening day of the trial, September 20, 1916, after the information had been read to the jury, counsel for the defendant, addressing the judge of the trial court, said: "Your honor, the defense asks that the spectators be excluded," to which the court replied: "Very well. I act on that suggestion in all cases of this character. The request has been made by the parties hereto, especially by the defendant, that in view of the nature of the proceedings to be had here we have a closed session. Therefore, all persons now here except such as are in some way related to this case will please retire." The record does not disclose what effect was given to this order, or to what extent, if any, it was enforced or obeyed. The trial of the cause proceeded for several days, and in fact was drawing toward its close when, on September 27, 1916, while the witnesses for the defense were being called to testify, counsel for the defendant said: "Now we ask at this time that the courtroom be cleared, your honor, under the former rule," to which the court replied:

"Well, I will clear it of all except any persons who have any legitimate interest here. I am very much in sympathy with counsel's motion in so far as it has to do with a great many people who are attracted to the courtroom when cases of this character are on trial, not because they have any sort or kind of legitimate interest in the proceedings, not that they are concerned at all with the administration of public justice,

but apparently simply and solely to gratify some sort of prurient curiosity or feeling or desire of some sort that finds great satisfaction in listening to testimony of the kind that is ordinarily adduced upon these hearings. If, upon the other hand, there are any persons here who are brought here because of any legitimate interest of any sort or kind in the case, or in any of those concerned with it, they may remain. For instance, if the defendant has here any personal friends or relatives, they may remain. If the complaining witness has any relatives or friends now here, they may remain. But the rest of the people here, who have no interest in this case, will kindly retire.

"Mr. McKenzie (Counsel for the Defendant): Your honor, if that is going to include the friends of this complaining witness we assert our right to a public trial.

"The Court: No, you having already waived your right to a public trial, that waiver will stand.

"Mr. McKenzie: We meant the whole courtroom with the exception of the officers, and that is the motion we make.

"The Court: All right. I will stand on that.

"Mr. McKenzie: We ask that we have a public trial and we refuse to waive the right.

"The Court: The trial will proceed as already ordered."

The record nowhere discloses to what extent the second order of the court was obeyed or enforced, nor in fact whether any portion of the public were excluded from the courtroom during the remainder of the trial of the cause, but if we are to assume for the purposes of this contention that both of the above orders of the trial court were obeyed, we are still of the opinion that as to the first order the defendant must be held to have waived his right to a public trial by his own request for the exclusion of spectators, and by his concurrence in the order which the trial court then made, and that as to the second order of the court, made also upon the defendant's request, that the courtroom be cleared, we think the form of the order was such as not to invade the right of the defendant to a public trial in case he had not already waived that right; and that even though the trial court had made its second order on its own initiative it would not have amounted to a denial of the right of the defendant to a public trial.

The provision of the constitution with respect to the right of accused persons to a public trial must be construed in a reasonable sense in view of the object to be subserved thereby, and is not to be interpreted as intended that the trial of criminal cases shall be held in places so large, or so open, as that the entire body of the public of a city or region may attend it if they so desire, or that every idle or morbidly curious person may have at all times freedom of admission to the place of trial. When the order of the court is sufficiently broad and flexible as to admit the officers of the court, the witnesses for the respective parties, the members of the bar, and also, as in this case, all others who have a legitimate interest of any sort or kind in the case, including the personal relatives or friends of the defendant and of the complaining witness, and only expressly excluding those ''who have no interest in the case,'' it cannot be said that the trial has not been a public trial, or that the order was not one which was clearly within the sound discretion of the trial court to make. (*Reagan* v. *United States,* 202 Fed. 488, [44 L. R. A. (N. S.) 583, 120 C. C. A. 627], and cases cited.) The authorities cited by appellant are not out of harmony with the views above expressed.

The appellant further contends that the trial court committed a prejudicial error in permitting the prosecuting witness to take her child (of whom it was asserted the defendant was the father) with her to the witness-stand and hold it in her lap while testifying. The record shows that the child was an infant, and ill, and was asleep while being so held by its mother, and further shows that the trial court not only refused to permit the child to be admitted in evidence for the purpose of showing an asserted similarity of features to those of its putative father, but even went beyond this refusal in an emphatic instruction given at the time to the jury not to be influenced by the presence or position of the child. In addition to this the record shows that the child had been in the courtroom with its mother prior to her taking the witness-stand, and subject to the same or even a closer observation on the part of the jury than was the case when the mother took the sleeping child with her to the stand. Under such conditions we fail to see either that the trial court erred, or that the defendant was in any way prejudiced by the episode of which he complains.

In addition to his foregoing contentions the defendant urges a number of objections to the instructions given or refused by the trial court. We have examined each of these in the light of the general body of instructions given by the court, and are convinced that upon the whole no prejudicial error was committed in the giving or refusing to give any of the instructions to which the appellant now objects.

We are able to discover no substantial error in the record before us.

Judgment and order affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 9, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 9, 1917.